## Glidden v. Pooler.

1. WARRANTY—*Construed with Reference to the Property.*—P. bought a Percheron stallion of G. upon a warranty that he was a sure foal getter. It appeared that good foal getters of the Percheron breed did not get on an average of more than fifty per cent of the mares served, in foal. *It was held* that the warranty was to be interpreted with reference to the Percheron breed of horses, and if the horse had the capacity of a good foal getter of such breed, the warranty would be fulfilled, although the vitality or potency of the breed was much less than in other breeds of horses.

2. WARRANTY—*Breach—Measure of Damages.*—The difference between what an article was worth, as it was on the day of sale, and as it was warranted to be at the time of sale, is the true measure of damages in case of a breach of warranty, unless there is some special damage not compensated for by that rule.

3. INSTRUCTIONS—*Breach of Warranty—Measure of Damages—Profits.* —On the trial of an action for the price of a stallion, the defense was a breach of warranty. The court refused to instruct the jury, for the plaintiff, that if the stallion did not answer the warranty as made by the plaintiff, and that the defendant sustained damages thereby, in determining the amount of damages to be awarded him, by way of set-off, by reason of such breach of warranty, they should not take into consideration the prospective gains or profits that the defendant expected to make by the services of the horse, upon mares to be served by said horse, unless they further believed from the evidence that the defendant had outstanding contracts for the services of said horse to mares, at the time of the purchase of the horse, and which contracts were known to the plaintiff at the time of said sale, and that said sale and purchase of said stallion was made with reference thereto. *Held*, that such refusal was error, as the instruction stated the correct rule of law.

Memorandum.—Assumpsit on promissory note. Pleas: general issue; set-off; breach of warranty; failure of consideration. Judgment for defendant. Appeal from the Circuit Court of DeKalb County; the Hon. CHARLES KELLUM, Judge, presiding. Heard in this court at the May term, 1893. Opinion filed December 12, 1893.

## STATEMENT OF THE CASE.

This was a suit in assumpsit, brought by Joseph F. Glidden against William A. Pooler, to recover the amount due on three promissory notes, for the aggregate sum of $1,300, given for the purchase price of an imported Percheron stallion, sold by the agent of the plaintiff to the defendant. The defense set up was set-off, and a total and partial failure of consideration, by reason of an alleged failure of warranty that the horse was a sure foal getter.

APPELLANT'S BRIEF, JONES & ROGERS AND I. V. RANDALL, ATTORNEYS.

The real measure of damages in this case, if there has been a breach in the contract or warranty, is a difference in value between the horse as he was warranted to be, and what he in fact actually was, on the day of sale. Woodworth v. Woodburn, 20 Ill. 184.

In awarding damages for the non-performance of an existing contract, the gains or profits of collateral enterprises in which the party claiming them has been induced to engage, by relying upon the performance of such a contract, can not be included. Horner v. Wood, 16 Barb. 389; Cuddy v. Major, 12 Mich. 368; Story v. N. Y. & H. R. Co., 6 N. Y. 85; Bridges v. Stickney, 38 Me. 361; Barnard v. Poor, 21 Pickering, 378; Fox v. Harding, 7 Cush. 516.

Loss of profits from collateral or subordinate contracts with third persons, though entered into for the purpose of carrying an original contract into effect, and upon the faith of it, can not be included in the damages for a breach of such original contract. Walrath v. Redfield, 11 Barb. 372; Horner v. Wood, 16 Barb. 389; Lowenstein v. Chappell, 30 Barb. 245; Story v. N. Y. & H. R. Co., 6 N. Y. 90; Fox v. Harding, 7 Cush. 523; Phila. W. & B. R. Co. v. Howard (54 U. S.), 13 How. 344.

C. A. BISHOP and CARNES & DUNTON, attorneys for appellee.

OPINION OF THE COURT, CARTWRIGHT, J.

Appellee bought a Percheron stallion from appellant April 15, 1888, and executed his three promissory notes, aggregating $1,300, with six per cent interest, payable to appellant for the purchase price. The notes having all matured, this suit was brought to enforce their payment. The defense made was that the stallion was warranted to be a sure foal getter, and that there was a breach of such warranty with consequent damages. The jury allowed to appellee, as damages under that defense, the whole amount of the note, which was the entire purchase price of the horse, and returned a verdict for appellee, upon which judgment was rendered against appellant for the costs of suit.

The defendant lived in Iowa, and bargained for the horse at DeKalb, Illinois, for use in the stud at his home, and the contract was made with reference to that use. The evidence was quite satisfactory that the alleged warranty was made. Upon the question whether the horse had, at the time of the sale, the capacity warranted, the defendant introduced evidence of services in prior years that did not prove fruitful, and also evidence of services and results in subsequent years; showing that in the year of the purchase he served eighty-seven mares and got twelve foals; the following year served forty-eight mares and got eight foals; the next year served twenty-four mares and got four foals, and the last year served eighteen mares resulting in two foals.

Plaintiff introduced evidence that good foal getters of the Percheron breed would not get an average of more than fifty per cent of the mares served, in foal.

Plaintiff's superintendent testified that from quite a number of Percherons in service on plaintiff's farm, the average was forty per cent. W. L. Ellwood testified that he had imported 1,500 Percheron stallions, and that fifty per cent would be a good average. The uncontradicted evidence was that the average was lower with this breed than with the roadster or common horse.

Doubtless, the warranty was to be interpreted with

Glidden v. Pooler.

reference to the Percheron breed of horses; and if the horse had the capacity of a good foal getter of such breed, the warranty would be fulfilled, although the vitality or potency of the breed was much less than of other breeds of horses.

The evidence for plaintiff was that this horse in prior years had equaled the percentage to be expected from a Percheron horse, and he attributed the subsequent want of success to the fact that the horse was accustomed to dismount, rigid or proud, as it is called, a variety of sterility, which, it was claimed, could be remedied by a repetition of the attempted, but incomplete service, and which remedy defendant neglected to adopt. It is not clear from the evidence whether the subsequent condition existed at the time of the sale or not. That was a question for the jury on all the evidence, as well as the question whether a horse that required repetitions of ineffectual efforts fulfilled the warranty, and we are not prepared to say that they were wrong in their conclusions.

But we think that in view of the evidence, the jury were not properly instructed on the question of damages. There was evidence as before stated, of the number of mares served, and there was also evidence of the price of service, which was to insure a foal; of the wages of a keeper in the season, and of the expense of care. From this evidence it was apparent that if the horse was as warranted, the defendant would have realized considerable profit, which the evidence tended to show had been in a large measure lost.

There was no evidence of any outstanding contracts which the horse was purchased to fill. The damages to be allowed to the defendant would be such as would cover the direct pecuniary loss, on account of a breach of the warranty. The difference between what the horse was worth as he was and as he was warranted to be, at the time of the sale, should be allowed to the defendant. The parties would necessarily have in contemplation the usual course of the business for which the horse was purchased, and the expenses that would naturally be incurred in such usual course, before the failure of the warranty would be demon-

strated.   If the defendant incurred any such expense above the income of the business, up to the time that a breach of warranty became definitely known, the difference in value would not compensate him for such loss, and it should be allowed.   Hodgman v. S. L. & S. R. R. Co., 45 Ill. App. 395.   But the profits of the business were uncertain and conjectural, and their loss could not be included in the damages. .  The plaintiff asked the court to instruct the jury that in assessing damages, they should not take into consideration prospective gains or profits that the defendant · expected to make by the services of the horse upon mares, unless there were outstanding contracts for such service at the time of the purchase, known to the plaintiff, and the sale and the purchase were made in reference thereto.   The instruction stated the rule of law correctly.   Green v. Williams, 45 Ill. 206; Heiner v. Richter, 51 Ill. 301; Frazier v. Smith, 60 Ill. 147.   The instruction was refused, and no rule of damages was given to the jury.   They were instructed that if they found the warranty and breach, then the defendant was entitled to a set-off for any damages sustained by reason of failure of the warranty, and that it was their duty to find how much damage he so sustained as a set-off against the notes.   The defendant fixed the value of the horse as warranted, in his testimony, at the purchase price, and there was no evidence that he was worth any more than ˙that sum, if as warranted.   It is evident that he would have some value as a gelding, or without the power of reproduction.   A deduction of the difference in value would not exhaust the whole purchase price in such a case, and the evidence did not show a net loss in expenses recoverable as damages.   The verdict allowed plaintiff nothing.   The jury,. having no rule, were left at liberty to include loss of profits for a period of years, of which there .was evidence before them.   We think that the instruction excluding them should have been given.

The judgment will be reversed and the cause remanded.